## Gustavus W. Spinney *vs.* Angie Spinney.

### Kennebec.     Opinion April 26, 1895.

*Fraudulent Divorce.    Notice.    Jurisdiction.    R. S., c. 60, § 4;*
*Stat. 1874, c. 184.*

The statute word "residence" as used in R. S., c. 60, § 4, relating to divorce proceedings, does not mean "whereabouts" or "commorancy."

When the libelee has a known residence in this State and is only temporarily absent from it, an actual personal service of the libel must be obtained.

In such a case, a constructive newspaper notice is not a sufficient service of the libel.

It is provided by statute, R. S., c. 60, § 4, that when the residence of the libelee is known, it shall be named in the libel, and actual notice to him shall be obtained, notwithstanding he is out of the State. *Held;* that notice in a newspaper, which the libelee never saw, is not actual notice.

It is also provided in the same statute that when the libelee's residence is not known to the libellant and cannot be ascertained by reasonable diligence, the libellant shall so allege under oath in the libel. *Held;* that when a wife knows where her husband's residence is, and that it is in this State, she is not justified in swearing to her libel alleging that she does not know where her husband's residence is, simply because she does not know in what town he is, or where he is staying, at the moment when the oath is administered to her; *also;* that service of the libel in such case by newspaper notice is illegal and insufficient to confer jurisdiction upon the court; that the apparent jurisdiction is colorable only, and not real; and that the decree of divorce granted thereon should, upon the petition of the libelee, be annuled.

Upon a petition to annul a divorce granted on a libel by the wife against the husband, *held,* that the libellant had not used due diligence, under the following circumstances, to ascertain his residence : The parties had been married over twenty years and during that time resided together in this State in the same town, he owning and occupying a homestead therein. Four children were born to them, two of whom surviving being of adult age. In 1888 the wife deserted her husband and removed to an adjoining county, and thereon July 21, 1891, applied for a divorce. During some portion of each year, before and after the desertion, the husband was temporarily absent from the State engaged in the business of selling fruit trees, but always kept his home in said town, voting and paying his taxes there, and leaving his address with the postmaster. He was a town officer for many years and was a member of the school board in 1891. At the trial it appeared that the divorce had been granted upon a default and *ex parte* hearing, and the wife admitted that, between April and July 21, 1891, she made no inquiries for him whatever; and did not care to know his post office address,—that she never asked for it. It further appeared that about the middle of the same April, she was with her husband at the funeral of one of their daughters in a neighboring city although she claimed that she began immediately after, through her children and her attorney, to make inquiries for him but without success.

This was a petition to set aside a decree of divorce granted to the respondent, by the Superior Court for Kennebec County, at the September term, A. D., 1891, on her libel. The petition which sets forth fully its grounds, was filed in the same court.

The petition in this case is as follows:

Respectfully represents Gustavus W. Spinney of Starks, in the county of Somerset, and State of Maine, as follows:

1. That he was lawfully married to one Angie M. Oliver, of said Starks, on the 26th day of June, 1868, and that they continued to live and cohabit together in said Starks until the 3d day of September, A. D., 1888, when this respondent deserted your petitioner as hereinafter set forth. That four children had been born to them since their intermarriage, two of whom, Lena E. Bracket, and Josie L. Spinney, are now living.

2. Your petitioner further says that since their said marriage he has always conducted himself as a faithful, temperate, and affectionate husband, and has ever been faithful to his marriage vows and obligations, but that said respondent has been unmindful of the same, and on the 3d day of September, A. D., 1888, without any justifiable cause, deserted said petitioner and her family in said Starks, and since that time has continued away from said petitioner and her home and family, although frequently requested by said petitioner to return to him and her marriage relations.

3. Your petitioner further represents that on the 21st day of July, A. D., 1891, the said respondent then residing in said Augusta, still further wickedly intending to injure and disgrace your petitioner, did sue out of the office of the clerk of this court a libel for divorce from the bonds of matrimony between her and your petitioner. That said respondent wickedly set forth in said libel certain false and malicious charges against your petitioner as will more fully appear on the record of this court.

4. That your petitioner long before and ever since his marriage with this respondent has been a resident of said town of Starks, owning and occupying a homestead therein. That during some portion of each year, both before and after said respondent deserted her home in said Starks, he has been tem-

porarily absent from the state in the vicinity of Plymouth, Massachusetts, engaged in the sale of fruit trees, but has always kept his home, and his last and usual place of abode in said Starks. That on the 21st day of July, A. D., 1891, he was still a resident of said town, still owning the same homestead therein, and was a member of the school board in said town, all of which facts were well known to this respondent, or could have been ascertained by her by the use of reasonable diligence ; yet this respondent, though well knowning the facts aforesaid, and well knowing the residence of your petitioner, but intending to injure said petitioner, and to avoid having him served with a copy of said libel, and to deceive and defraud this Honorable Court, did on the said 21st day of July, A. D., 1891, make oath in her said libel, before a justice of the peace, that she had used reasonable diligence to ascertain the residence of said petitioner, but was unable to do so, and did not know where it was. That in consequence of said false oath no service by copy was made upon this petitioner, but notice by publication was ordered by said court, and thereupon in order further to injure said petitioner, and to prevent his having any knowledge of the pendency of said libel, the respondent caused said notice to be published in the Hallowell Register, a newspaper published in Hallowell in the county of Kennebec, said respondent well knowing that said newspaper was merely of small local circulation, and would not come to the notice of the said petitioner or any of his friends in said Starks.

5. Your petitioner further alleges that said libel was duly entered at the September term, 1891, of said Superior Court, and by means of the false oath aforesaid, and of the fraudulent and deceitful practices above described, this petitioner had no knowledge or information of the pendency of the same, and on the 15th day of September, 1891, said libel was defaulted on the docket of said court, no appearance having been entered for the libelee, and on the same day a divorce was decreed this respondent for the alleged cause of gross and confirmed habits of intoxication, and refusal to support, as fully appears by the records of this court.

6. Your petitioner further alleges that although his residence and last and usual place of abode had been in the town of Starks, long before and ever since said libel was brought, as was well known to this respondent, yet no copy of said libel was ever served upon him or left at his place of last and usual abode in said Starks ; that he never saw the publication of said libel in said Hallowell Register and had no information or knowledge regarding the same, that he never had any knowledge or even suspicion that a libel had been brought by his said wife, or a divorce granted, until the 18th day of January, 1892, all because of the false and fraudulent oath and practices of this respondent as hereinbefore set forth, and that had he known of the pendency of said libel he would have resisted the same, and as he thinks, successfully. .

7. Wherefore, inasmuch as great injustice has been done to your petitioner by said decree, and a willful fraud has been committed upon this court by said respondent, your petitioner prays that said judgment and decree of divorce so fraudulently obtained may be set aside, vacated and annulled.

Dated this 1st day of March, A. D., 1892.

Upon the testimony the presiding judge dismissed the petition and the defendant filed the following exceptions :

1. To the ruling of the court that the evidence was sufficient in law to support a finding in favor of the respondent.

2. To the ruling of the court that the evidence was not sufficient to require, as a matter of law, a finding for the petitioner.

3. To the ruling of the court that R. S., c. 60, § 4, justified the libellant in averring under oath that the residence of the libelee was not known to her and could not be ascertained by reasonable diligence under the facts in the case, as admitted by the testimony and found by the court below, notwithstanding the libelee had a permanent home and residence within the state, and that fact and the place of such residence was actually known to the libellant, provided the libelee was temporarily absent from such residence and his exact whereabouts at the time of making said affidavit was not known to the libellant and could not be ascertained by her by reasonable diligence.

4. To the ruling of the court that the provisions of the statute under the facts as set forth in full in exception three above, gave the court any jurisdiction under the original libel to proceed against the libelee without obtaining, through some means actual notice to him as provided by the statute.

5. To the ruling of the court dismissing the petition, because it was not warranted as matter of law by the evidence in the case, and because the evidence in the case required, as a matter of law, the petition should be sustained.

The defendant appeared and filed a general denial.

*Orville D. Baker*, for plaintiff.

Exceptions lie to all rulings of the presiding judge, including any final ruling granting divorce. *Thompson* v. *Thompson*, 79 Maine, 291; *Rogers* v. *Rogers*, 122 Mass. 423-5; *McLathlin* v. *McLathlin*, 138 Mass. 299.

1. The court had no jurisdiction in the original libel, even on the face of the papers and certainly on the facts as found by the presiding judge below in this hearing; because the libelee, at the date of the libel, had his established residence in the town of Starks within the State, and this residence was duly named in the libel itself, yet, though the libelee was then out of the State, no actual notice upon him was obtained or attempted by the court; but a decree was rendered without legal notice to the libelee, and without his actual knowledge or appearance.

Under this head we claim by these exceptions that the court below was required, as a matter of law, to sustain the petition and vacate the decree of divorce, both by inspection of the original libel and by the facts as found and reported by him at the hearing.

2. Because at the date of the libel, viz., July 21st, 1891, the libellant in fact knew not only the residence but the whereabouts of the libellee, or by the use of reasonable diligence could have ascertained it.

Under this second head we claim by our exceptions that there was no evidence in the case which would warrant, as matter of law, the finding of the court below that the libellant had used reasonable diligence to ascertain the then residence, or even

whereabouts, of the libellee.　R. S., c. 60, § 4, turns upon the fact of an existing, ascertainable residence.　If the "residence" of the libellee can be ascertained it must be named in the libel (as was correctly done in this case), and then, if the libellee is out of the State (not resides out of the State, but "is," *i. e.*, is found or commorant out of the State), then, in the language of the statute, actual notice must be obtained, and this requirement is mandatory.　If, then, the libellee in fact had an ascertainable residence at the date of the libel, still more if that residence was well known to the libellant, as the court below has expressly found by its opinion, then it had no jurisdiction to grant the original divorce, except on actual notice to the libellee, which was never ordered or given ; and the petition must have been sustained as matter of law.

Nature of proceeding : This petition is in legal effect only a motion addressed to the court to vacate its own judgment for fraud and want of jurisdiction.　Such is, indeed, the precise language of our own court in treating of a petition in the same form as the one at bar, in leading case of *Holmes* v. *Holmes*, 63 Maine, 424.　The court there speak of the proceeding and petition as a "motion."　Bishop Mar. & Divorce, 4th Ed. §§ 751, 753 ; *Adams* v. *Adams*, 51 N. H. 388 ; *Lord* v. *Lord*, 66 Maine, 265 ; *Edson* v. *Edson*, 108 Mass. 590, and cases ; Freem. Judgm. § 93 ; 1 Chit. Prac. 104.

Residence : *Drew* v. *Drew*, 37 Maine, 393 ; *Warren* v. *Thomaston*, 43 Maine, 417 ; *Langdon* v. *Doud*, 6 Allen, 425. Counsel also cited *Mace* v. *Mace*, 7 Mass. 212.

*F. E. Southard*, for defendant.

Exceptions 1, 2 and 5 are to findings of fact by the justice to the Superior Court.　Such findings by him are conclusive, and are not the subject of exceptions.　*Hazen* v. *Jones*, 68 Maine, 343.

The question raised by exceptions 3 and 4 cannot be reached by this process.　This petition is grounded upon the alleged fraud of the respondent.　The errors complained of in these exceptions amount, at most, to errors of law or fact in the proceeding

wherein the decree of divorce was granted, and the petitioner's remedy is either a writ of error, or a petition for a review.

It is generally true that an erroneous judgment is to be avoided only by a writ of error. *Caswell* v. *Caswell*, 28 Maine, 232 (237).

This petition is addressed simply to the discretion of the court, and the decree dismissing it is not a subject for revision by this court. It has been repeatedly held that exceptions do not lie to the exercise of the discretion of a judge.

SITTING : PETERS, C. J., WALTON, EMERY, HASKELL, WHITE-HOUSE, WISWELL, JJ.

WALTON, J. This is a petition in which the petitioner avers that his wife fraudulently obtained a divorce from him, without his knowledge, and without a legal service of her libel ; and he asks to have the divorce annulled. The petition was addressed to the justice of the Superior Court for the county of Kennebec, by whom the divorce was granted. The justice of that court dismissed the petition, holding that the service of the libel was legal, and that the alleged fraud was not proved. The case is before the law court on exceptions, accompanied by a full report of the evidence.

We think the ruling that the service of the libel was legal, was erroneous, and that, upon the uncontroverted facts in the case, the divorce should have been annulled.

The only service of the libel was by publication in a news-paper. Mr. Spinney never saw the newspaper, and never had any actual notice of the pendency of the libel till after an *ex parte* hearing had been had and the divorce granted. To obtain such an order of notice, Mrs. Spinney made an affidavit that she had used due diligence to ascertain the residence of her husband and that she had been unable to do so.

This affidavit was clearly false. Whether it was wilfully false, we will not now stop to inquire. It was in fact false. His residence, as his wife well knew, was in the town of Starks in this State. He had resided there for many years. His wife had resided there with him. He owned and occupied a house there, voted there, paid taxes there, and at the time of

which we are speaking, he was superintendent of the schools of the town. He had not abandoned his home or his wife. She had left him. Mrs. Spinney knew perfectly well where her husband's residence was, and that it was in the town of Starks in this State. It may be true and probably is true, that, at the very moment when she made her affidavit, she did not know in what town her husband then was; for he was a traveling agent for the sale of nursery stock, in and about Plymouth in the Commonwealth of Massachusetts. But he was not secreting himself; and there can not be the slightest doubt that, by the use of only ordinary diligence, a personal service of the libel could have been obtained. And this brings us to the consideration of an important question of law.

Is a wife, who knows perfectly well where her husband's residence is, and that it is in this State, justified in swearing that she does not know where her husband's residence is, simply because she does not know in what town he is, or where he is staying, at the moment when the oath is administered to her? We think not. And yet the court below seems to have so held. The language of the court, as stated in the exceptions, is this: "To construe the statute as meaning actual residence, in its usual sense, hardly seems reasonable; for, in that case, a person, by being absent from his residence, and out of the state, could avoid the service of process for divorce indefinitely, as service by copy and summons, left at the place of his last and usual abode, is not good, without proof of actual notice. . . . Therefore, in making oath that she did not know the present residence of her husband, although she had used reasonable diligence to ascertain it, she must be held to have meant his whereabouts,— *the place where he was then staying.*" And upon this interpretation of the statute, and this construction of Mrs. Spinney's affidavit, the court held that the newspaper service of the libel was sufficient.

We can not accept this interpretation of the statute. We think it does mean "actual residence, in its usual sense." The statute declares that when the residence of the libellee is known, it shall be named in the libel, and actual notice shall be obtained,

notwithstanding the libellee is out of the state. R. S., c. 60, § 4. Notice in a newspaper which the libellee never sees, is not actual notice. This statute was first enacted in 1874, chapter 184; and we entertain no doubt that its purpose was to render impossible such a notice as the one given in this case. When the libellee has a known residence in this State, and is only temporarily absent from it, an actual personal service of the libel must be obtained. In such a case, a constructive newspaper notice is not a sufficient service of the libel.

And her alleged diligence was no diligence at all. Her affidavit was made July 21, 1891. She pretends to have made some inquiries for her husband during the latter part of the preceding April. But she does not claim that she made any inquiries at or near the time of making her affidavit. About the middle of April she was with her husband at the funeral of one of their daughters; and if it is possible to believe that she commenced immediately to make inquiries for him, for the purpose, as she says, of obtaining a personal service of her libel upon him, she admits that between April and the twenty-first of July, when she made her affidavit, she made no inquiries whatever. And in one of her answers she says she did not care to know his post office address,— that she never asked for it.

It appears that Mrs. Spinney left her husband in 1888; that as early as April, 1891, she had become acquainted with a man whom she has since married, *pendente lite*. She says that he then backed a letter for her. And it appears that, from that time on, she became very solicitous to obtain a divorce from her husband. Her attorney says that she was in his office once a week at least. July 21, 1891, she made her affidavit declaring that she had used due diligence to ascertain her husband's residence, and had been unable to do so. The affidavit was false. She had used no diligence at all. And she well knew where her husband's residence was. And our firm belief is that the affidavit was wilfully false, and was made for the express purpose of obtaining a newspaper notice of the pendency of her libel, which she hoped and believed would not be seen by her husband, and that she would thus be able to obtain an *ex parte* hearing upon her libel,

and an unopposed divorce. But if in this conclusion we are in error, still, it is the opinion of the court that the service of the libel was illegal and insufficient to confer upon the court jurisdiction; that the apparent jurisdiction was colorable only, and not real; and that it is the duty of the justice of the Superior Court, by whom the divorce was granted, to annul it.

*Exceptions sustained.*

EMERY, J. Concurred as follows :—

EMERY, J. I concur in sustaining the exceptions to the interpretation put upon the statute and the affidavit by the Superior Court.

So far as the language of the opinion may import that the findings of facts by the Superior Court may be reviewed upon a bill of exceptions, I do not concur.